UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
_____X
KEVIN POWELL

        Plaintiff,

-*against*-

DAVID ROBINSON, LENTON TERRELL HUTTON,
JAMES G. ROBINSON, STEVEN BAGATOURIAN,
JEREMY HAFT, EDDIE GONZALEZ,
MORGAN CREEK PRODUCTIONS, INC.,
PROGRAM PICTURES, LIONS GATE FILMS, INC.,
"JOHN DOE ENTITIES" 1-10 and
"JOHN DOES" 1-10

        Defendants,
_____X

Case No.: 1:17-cv-03785

**VERIFIED COMPLAINT**

**JURY TRIAL DEMANDED**

Plaintiff, KEVIN POWELL, through his attorneys, KEITH WHITE, PLLC. and KENNETH J. MONTGOMERY, PLLC, complaining of the defendants, DAVID ROBINSON, LENTON TERRELL HUTTON, JAMES G. ROBINSON, STEVEN BAGATOURIAN, JEREMY HAFT, EDDIE GONZALEZ MORGAN CREEK PICTURES, PROGRAM PICTURES, and LIONS GATE FILMS, upon information and belief, sets forth and alleges as follows:

## SUMMARY OF CLAIMS

1. Plaintiff commences this action to: (a) enjoin Defendants from future infringement of Plaintiffs' duly copyrighted and original works -a series of original articles , entitled "Exclusive: Is Tupac Crazy or Just Misunderstood" published in February 1994, "Tupac Shakur Jailhouse Exclusive" published in April 1995 and "Live from Deathrow" published in February 1996 (the "Original Work")--(b) recover damages arising from Defendants' infringement of Plaintiffs' copyright in the Original Work and (c) seek other declaratory relief.

2. The Defendants are all active participants in the writing, production and international broadcasting of a derivative audiovisual work, substantially similar to Plaintiffs' copyrighted Original Work, entitled "ALL EYEZ ON ME" which was first aired by Defendants on June 16, 2017 (the "Infringing Work").

---

## JURISDICTION AND VENUE

3. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§1331, 1338(a) and 1367(a) as it arises under the Copyright Act of 1976, 17 U.S.C. §101 *et seq.* (the "Act") and pursuant to the principles of supplemental jurisdiction.

4. Venue is proper in this district pursuant to 28 U.S.C. §§1391(b) and 1400(a) in that Defendants are subject to personal jurisdiction in the Eastern District of New York by virtue of Defendants' broadcast of the infringing work to this jurisdiction.

## PARTIES

5. Plaintiff Mr. Kevin Powell ("Mr. Powell"), is a citizen of the United States and a resident of the State of New York, having an address of 137 Montague St PMB 221, Brooklyn, NY 11201.

6. Defendant David Robinson ("Mr. Robinson"), is a citizen of the United States and a resident of the State of California, having a contact address of 10351 California Route 2, Los Angeles, CA 90025, and is the executive producer of the Infringing Work, and at all relevant times was doing and transacting business within the State of New York.

7. Defendant James G. Robinson ("Mr. J Robinson"), is a citizen of the United States and a resident of the State of California, having an address of 10351 California Route 2, Los Angeles, CA 90025, and is the executive producer of the Infringing Work, and at all relevant times was doing and transacting business within the State of New York.

8. Defendant Lenton Terrell Hutton ("Mr. Hutton"), is a citizen of the United States and a resident of the State of California, having a business address of 8605 Santa Monica Blvd #32335 Los Angeles, CA 90069, and is the executive producer of the Infringing Work, and at all relevant times was doing and transacting business within the State of New York.

9. Defendant Steven Bagatourian ("Mr. Bagatourian"), is a citizen of the United States and a resident of the State of California, having a contact address care of ICM, 10250 Constellation Blvd, Los Angeles, CA 90067, and is the screenwriter of the Infringing Work, and at all relevant times was doing and transacting business within the State of New York.

10. Defendant Jeremy Haft ("Mr. Haft"), is a citizen of the United States and a resident of the State of California, having a contact address care of Summit Talent & Literary Agency, 9454 Wilshire Blvd PH, Beverly Hills, CA 90212, and is the screenwriter of the Infringing Work, and at all relevant times was doing and transacting business within the State of New York.

11. Defendant Eddie Gonzalez ("Mr. Gonzalez"), is a citizen of the United States and a resident of the State of New York, having a contact address care of Summit Talent & Literary Agency, 9454 Wilshire Blvd PH, Beverly Hills, CA 90212, and is the screenwriter of the Infringing Work, and at all relevant times was doing and transacting business within the State of New York.

12. Defendant MORGAN CREEK PRODUCTIONS, INC. ("MORGAN CREEK") is a California corporation with a principal place of business at 10351 California Route 2, Los Angeles, CA 90025. MORGAN CREEK is the Producer and Distributor of the Infringing Work, and at all relevant times was doing and transacting business within the State of New York.

13. Defendant PROGRAM PICTURES ("PROGRAM PICTURES") is a California limited liability company with a principal place of business at 8605 Santa Monica Blvd #32335 Los Angeles, CA 90069. PROGRAM PICTURES is the Producer and Distributor of the Infringing Work, and at all relevant times was doing and transacting business within the State of New York.

14. Defendant LIONS GATE FILMS, INC. ("LIONS GATE"), is a California corporation with a principal place of business at 2700 Colorado Avenue Suite 200, Santa Monica, CA 90404. LIONS GATE is the company distributing and broadcasting the Infringing Work, and at all relevant times was doing and transacting business within the State of New York.

15. Defendants "John Doe Entities" 1 - 10 are corporations, partnerships and/or limited liability companies whose identities are currently unkown, but have infringed Plaintiffs' copyright in the Original Work in direct violation and contravention of 17 U.S.C. §§ 101 *et seq.* and 106 *et seq.* The identity of these entities will become known with discovery.

16. Defendants "John Does" 1 - 10 are individuals whose identities are currently unknown, but who have infringed Plaintiffs' copyright in the Original Work in direct violation and contravention of 17 U.S.C. §§ 101 *et seq.* and 106 *et seq.* The identity of these individuals will become known with discovery.

**FACTUAL BACKGROUND**

17. Between February of 1994, April of 1995 and February of 1996, Plaintiff completed and published several articles and cover stories for Vibe Magazine based on the life and struggles of Tupac Shakur. While some of the content in these articles was factual, some portions of the article were changed or embellished by Plaintiff. Plaintiff published these articles under the names, "Exclusive: Is Tupac Crazy or Just Misunderstood" published in February 1994, "Tupac Shakur Jailhouse Exclusive" published in April 1995 and "Live from Deathrow" published in February 1996 ("the Original Work").

18. Plaintiff is the sole and lawful proprietor of all rights, title and interest in and to the copyrighted Original Work.

19. The substantial, salient and original aspects of the Original Work, copyrightable under the Act and the laws of the United States, are as follows: The Original Work centers around the childhood and roots of Tupac Shakur, Afeni Shakur and their struggle as the basis for a piece, "not just about a rapper but about the young black male identity crisis in America today." The Original Work also centers on Tupac Shakur's duplicative identity as a progeny of the civil rights revolution era and a contemporary of the gangsta rap era and the subsequent attempts on his life and livelihood by shady characters and government officials.

- The Original Work also concentrates on the economic struggles of Tupac Shakur early on in his childhood.

- The Original Work also concentrates on the impact a character named "Legs" had on Tupac's life.

- The Original Work also concentrates on a sequence of arrests for various cases between 1991 and 1993.

- Of significant focus in the original work is the strong connection between the Plaintiff as journalist and the subject, Tupac Shakur.
- The Original Work features a fictional character named Nigel, based on a real person named Jacques "Haitian Jack" Agnant.
- The Original Work features details of Nigel and Tupac's relationship that have not been published by anyone else.
- The Original Work also details Afeni Shakur representing herself at trial and winning her freedom.
- The Original Work features Tupac's epiphany on stage in high school in Baltimore and the profound effect the arts had on him.
- The Original Work also features a journalist who identifies with Tupac's struggle to "prove ourselves to the world."
- The Original Work is created by the Plaintiff journalist while the subject, Tupac is incarcerated and interviewing with Plaintiff.
- The Mood of the Original Work is dramatic and occasionally combative.
- The Theme of the Original Work is documentary style reporting with some facts changed or embellished.
- The dialogue of the Original Work is fast and heavy laden with the use of metaphorical slang and strong language, including but limited to the liberal use of the f-word, indicative of the way rappers in the 1990's talk.
- The dialogue of the Original Work is intense, honest and revealing.

20. In February of 1994, April of 1995 and February of 1996, Plaintiff published the Original Work through Vibe Magazine.

21. The Original Work was published domestically and internationally and critically acclaimed.

22. On June 13, 2017, in an internationally broadcast interview with "The Breakfast Club," Defendant Mr. Hutton stated that "all of the interviews" of Tupac Shakur were used to make the Infringing Work.

23. There are stories with fictional characters and re-worked narratives that are unique to the Original Work that appear in the Infringing Work.

24. Rather than contact Plaintiff, Defendants, while fully aware of Plaintiff's copyright in the Original Work, willfully and improperly developed, produced, filmed and released the Infringing Work derived from Plaintiffs' Original Work.

25. On June 16, 2014, Defendant Lions Gate distributed the Infringing Work, entitled "All Eyez On Me." Though certain aspects of the Original Work were deliberately changed in an attempt to obfuscate the origin of the Infringing Work, the salient aspects of the Original Work shine through.

26. The substantially similar and infringing aspects of the Infringing Work are as follows:

- The Infringing Work centers around Tupac Shakur's duplicative identity as a progeny of the civil rights revolution era and a contemporary of the gangsta rap era and the subsequent attempts on his life and livelihood by shady characters and government officials.

- The Infringing Work also concentrates on the impact a character named "Legs" had on Tupac's life.

- Also of significant focus in the Infringing Work is the concentration on a sequence of arrests for various cases between 1991 and 1993. The pacing and coverage of these arrests is paced exactly like the Original Work.

- Also of significant focus in the Infringing Work is the strong connection between the Plaintiff as journalist and the subject, Tupac Shakur

- The Infringing Work also features a fictional character named Nigel, based on a real person named Jacques "Haitian Jack" Agnant.

- The Infringing Work also features details of Nigel and Tupac's relationship that have not been published by anyone else but Plaintiff.

- The Infringing Work also details Afeni Shakur representing herself at trial and winning her freedom.

- The Infringing Work also features Tupac's epiphany on stage in high school in Baltimore and the profound effect the arts had on him.

- The Infringing Work also features a journalist who identifies with Tupac's struggle to "prove ourselves to the world."

- The Infringing Work is a depiction of the Original Work being shared to the Plaintiff journalist while the subject, Tupac is incarcerated.

- The Mood of the Infringing Work is also is dramatic and occasionally combative.

- The Theme of the Infringing Work is also documentary style reporting with some facts changed or embellished.

- The dialogue of the Infringing Work is also fast and heavy laden with the use of metaphorical slang and strong language, including but limited to the liberal use of the f-word, indicative of the way rappers in the 1990's talk.

- The dialogue of the Infringing Work also is intense, honest and revealing.

27. Moreover, and as further evidence of the originality of Plaintiffs' Original Work and Defendants' infringement thereof, there currently are other depictions and narratives surrounding the life and death of Tupac Shakur, but none focus on the on-going relationship between subject and journalist and none copy embellished facts from the Original Work. In fact, the name and character of "Nigel" in the Original Work was specifically created by the Plaintiff without the authority or encouragement of Tupac Shakur. This made up character of Nigel was the embellishment of a real life character that was central to the narrative in Plaintiff's articles. This made up character was copied and pasted into Defendant's film to play the same central character and role in the Infringing Work as he did in the Original Work.

## AS FOR A FIRST CAUSE OF ACTION

### (Preliminary Injunction)

28. Plaintiff restates and realleges each and every allegation contained in this Complaint with the same force and effect as if fully set forth herein.

29. Plaintiff is the sole and lawful proprietor of all rights, title and interest in and to the copyrighted Original Work.

30. Defendants had access to the Original Work by virtue of the Original Work being published and critically acclaimed.

31. Defendants, without Plaintiff's authorization, knowledge or consent, willfully infringed on Plaintiff's Original Work by causing to be written, produced, and broadcasted in theatres a derivative work entitled "All Eyez On Me"-the Infringing Work--which is substantially similar to Plaintiff's Original Work.

32. Accordingly, Defendants have infringed Plaintiff's copyright in the Original Work in direct violation and contravention of 17 U.S.C. §§ 101 *et seq.* and 106 *et seq.*

33. Plaintiff will incur substantial and irreparable injury if Defendants' are allowed to continue their infringement of the Original Work pending the resolution of this action.

34. By reason of the foregoing, Plaintiff is entitled to a preliminary and permanent injunction pursuant to 17 U.S.C. § 502 enjoining and restraining Defendants from further infringement or broadcast of Plaintiff's copyrighted Original Work.

### AS FOR A SECOND CAUSE OF ACTION
### (Actual Damages for Copyright Infringement)

35. Plaintiff repeats and realleges each and every allegation contained in this Complaint with the same force and effect as if fully set forth herein.

36. Plaintiff is the sole and lawful proprietor of all rights, title and interest in and to the copyrighted Original Work.

37. Defendants had access to the Original Work by virtue of the Original Work being published and critically acclaimed.

38. Defendants, without Plaintiff's authorization, knowledge or consent, willfully infringed on Plaintiff's Original Work by causing to be written, produced, and broadcasted in theatres a derivative work entitled "All Eyez On Me"-the Infringing Work--which is substantially similar to Plaintiff's Original Work.

39. Accordingly, Defendants have infringed Plaintiffs' copyright in the Original Work in direct violation and contravention of 17 U.S.C. §§ 101 *et seq.* and 106 *et seq.*

40. By reason of the foregoing, Plaintiffs are entitled to actual damages and profits pursuant to 17 U.S.C. § 504(b) in an amount to be determined at trial.

## AS FOR A THIRD CAUSE OF ACTION

### (Statutory Damages for Copyright Infringement)

41. Plaintiff repeats and realleges each and every allegation contained in this Complaint with the same force and effect as if fully set forth herein.

42. Plaintiff is the sole and lawful proprietor of all rights, title and interest in and to the copyrighted Original Work.

43. Defendants had access to the Original Work by virtue of the Original Work being published and critically acclaimed.

44. Defendants, without Plaintiff's authorization, knowledge or consent, willfully infringed on Plaintiff's Original Work by causing to be written, produced, and broadcasted in theatres a derivative work entitled "All Eyez On Me"-the Infringing Work--which is substantially similar to Plaintiff's Original Work.

45. Accordingly, Defendants have infringed Plaintiff's copyright in the Original Work in direct violation and contravention of 17 U.S.C. §§ 101 *et seq.* and 106 *et seq.*

46. By reason of the foregoing, Plaintiff is entitled to statutory damages pursuant to 17 U.S.C. § 504(c)(1), in an amount not less than $750 or more than $30,000 per broadcast of the Infringing work as statutory damages pursuant to 17 U.S.C. §504(c)(1), and the sum of $150,000 per broadcast of the Infringing Work as additional statutory damages pursuant to 17 U.S.C. §504(c)(2).

## AS FOR A FOURTH CAUSE OF ACTION

### (Attorney's Fees and Costs)

47. Plaintiff repeats and realleges each and every allegation contained in this Complaint with the same force and effect as if fully set forth herein.

48. Plaintiffs are the sole and lawful proprietor of all rights, title and interest in and to the copyrighted Original Work.

49. Defendants had access to the Original Work by virtue of the Original Work being published and critically acclaimed.

50. Defendants, without Plaintiffs' authorization, knowledge or consent, willfully infringed on Plaintiffs' Original Work by causing to be written, produced, and broadcasted in theatres a derivative work entitled "All Eyez On Me"-the Infringing Work--which is substantially similar to Plaintiff's Original Work.

51. Accordingly, Defendants have infringed Plaintiff's copyright in the Original Work in direct violation and contravention of 17 U.S.C. §§ 101 *et seq.* and 106 *et seq.*

52. By reason of the foregoing, Plaintiff respectfully requests the recovery of all costs as well as attorneys' fees in connection with the prosecution of this case pursuant to 17 U.S.C. § 505.

## AS FOR A FIFTH CAUSE OF ACTION

### (Constructive Trust )

53. Plaintiff repeats and realleges each and every allegation contained in this Complaint with the same force and effect as if fully set forth herein.

54. By virtue of their wrongful conduct, Defendants have illegally received money and profits that rightfully belong to Plaintiff.

55. Defendants hold the illegally received money and profits in the form of bank accounts, real property or personal property that can be located and traced.

56. Defendants hold the money and profits that they have illegally received as constructive trustees for the benefit of Plaintiff.

## AS FOR A SIXTH CAUSE OF ACTION

### (Accounting)

57. Plaintiff repeats and realleges each and every allegation contained in this Complaint with the same force and effect as if fully set forth herein.

58. Pursuant to 17 U.S.C. § 504, Plaintiff is entitled to recover all of Defendants' profits attributable to their acts of infringement.

59. Pursuant to 17 U.S.C. § 504, Plaintiff is entitled to recover actual damages sustained by virtue of Defendants' acts of infringement.

60. The amount of money due from Defendants is presently unknown to Plaintiff and cannot be ascertained without a detailed accounting by Defendants of all profits obtained from their marketing, distribution, and national television broadcasting of the Infringing Work.

**WHEREFORE**, the Plaintiff respectfully request this Court to enter a judgment against the Defendants for their willful writing, producing, and broadcasting in theatres a derivative work entitled "All Eyez On Me"-the Infringing Work-which is substantially similar to Plaintiffs' Original Work which resulted in, and continues to result in, injuries to Plaintiff. Accordingly, Plaintiff respectfully requests that this Court::

a. Issue a preliminary and permanent injunction against the Defendants, and all others in active concert or participation with Defendants, from further broadcast of the Infringing Work or other infringement of Plaintiff's protected copyrighted Original Work;

b. Order the Defendants to recall and destroy all copies of the Infringing Work or any other derivatives of Plaintiff's Original Work, in whatever form they may exist;

c. Order Defendants to pay Plaintiff an amount to be determined at trial in actual damages and profits, plus interest, pursuant to 17 U.S.C. §504(b), the exact amount to be determined at trial;

d. Order Defendants to pay Plaintiff not less than $750 or more than $30,000 per broadcast of the Infringing work as damages pursuant to 17 U.S.C. §504(c)(1);

e. Order Defendants to pay Plaintiff the sum of $150,000 per broadcast of the Infringing Work as additional statutory damages pursuant to 17 U.S.C. §504(c)(2);

f. Order Defendants to pay Plaintiff both the costs of this action and the reasonable attorneys' fees incurred by Plaintiff in prosecuting this action pursuant to 17 U.S.C. §505;

g. Order the imposition of a constructive trust over Defendants' profits which resulted from their infringement of Plaintiffs' Original Work;

h. Order that Defendants to provide Plaintiff a full and complete accounting of all profits obtained from their marketing, distribution, and national television broadcasting of the Infringing Work and any other amounts due and owing to Plaintiff as a result of Defendants' infringement; and

i. Grant Plaintiff such other and additional relief as the Court deems just and proper.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff respectfully demands that this proceeding be tried to a jury.

Dated: June 23, 2017

    Brooklyn, NY

By: \_\_\_\_\_/ss/Keith_White, Esq.\_\_\_\_\_
KEITH WHITE, PLLC
KENNETH J. MONTGOMERY, PLLC
*Attorneys for Plaintiffs*
198A Rogers Avenue
Brooklyn, NY 11225
718-403-9261

## VERIFICATION

STATE OF New York     )
                     )ss:
COUNTY OF Kings       )

I, Kevin Powell, am the named Plaintiff in the foregoing action. I have read the Verified Complaint and know its contents. I am informed and believe, and on that ground allege, that the factual matters stated therein are true. The matters stated are true to my own knowledge, except as to those matters that are stated on information and belief, and as to those matters, I believe them to be true.

_____
Kevin Powell

Sworn to before me this 23 day
of June

_____
NOTARY PUBLIC

ANNISA K. BENASSEUR
NOTARY PUBLIC-STATE OF NEW YORK
Registration No. 01BE6331033
Qualified in Kings County
Commission Exp September 28, 2019